FILED & ENTERED

JUL 26 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gae         DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>**DANA DORSEY**,<br><br>Debtor. | Case No. 2:12-bk-18895-RK<br><br>Chapter 7<br><br>**MEMORANDUM DECISION RE MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)(4)**<br><br>DATE:    July 24, 2012<br>TIME:    11:00 a.m.<br>PLACE:   Courtroom 1675<br>         255 E. Temple St.<br>         Los Angeles, CA  90012 |

This case presents a question of whether relief from the automatic stay may be granted under 11 U.S.C. § 362(d)(4) without any showing that the debtor actually participated in a "scheme to delay, hinder, or defraud creditors." For the reasons stated below, the court answers this question in the affirmative.

This matter initially came on for hearing before the undersigned United States Bankruptcy Judge on May 8, 2012 on a Motion for Relief from the Automatic Stay (the "Motion") filed by Springleaf Financial Services, Inc., fka American General Financial Services, Inc. ("Movant"). Cassandra J. Richey and Melissa A. Vermillion, of Prober &

Raphael, A Law Corporation, appeared on Movant's behalf.  No appearance was made on behalf of the Debtor, Dana Dorsey.

In the Motion, Movant requested relief under 11 U.S.C. § 362(d)(1), (2) and (4).  On April 11, 2012, the Debtor filed a written response to the Motion, stating:  "Debtor has no knowledge of this property, the alleged transferor, or that the fractional interest was transferred to her.  She does not oppose relief from stay, but because of her knowledge, there can be no finding of bad faith."  Response to Motion, filed on April 11, 2012, at 1.

On May 21, 2012, the court entered an order granting relief under 11 U.S.C. § 362(d)(1).  The hearing on the Motion was continued to allow Movant to submit supplemental briefing regarding its request for relief under § 362(d)(4).  At the July 24, 2012 hearing, the court took the remaining matter of relief under § 362(d)(4) under submission.  The court now enters this memorandum decision on § 362(d)(4) relief.

**FACTS**

On March 13, 2012, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C.  On March 28, 2012, Movant filed the Motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), (2) and (4) with respect to real property located at 321 De Anza Way, Oxnard, Ventura County, California 93033 (the "Subject Property").  In the Motion, Movant provided documentation showing that the original borrower of the loan secured by a trust deed on the Subject Property was Angelica Suarez ("Suarez").  *See* Exhibits 1-7 to Motion.  The trust deed in favor of Movant was recorded with the Ventura County Clerk and Recorder in 2007.   Exhibit 1 to Motion.  Movant's evidence showed that Suarez was delinquent on the loan 19 monthly payments with arrears totaling $36,552.77.  Declaration of Rocky Lolio, Motion at 6-10.

Movant also submitted evidence showing that the following events took place.  *See* Exhibits 1-7 to Motion.

On December 20, 2011, Suarez purportedly transferred an ownership interest in the Subject Property to Gloria Becerra ("Becerra") through a grant deed shown to be

2

1  recorded on December 21, 2011.  The grant deed recites on its face that no
2  consideration was given by the transferee.
3        On November 28, 2011, three weeks prior to the stated date of recordation of the
4  grant deed from Suarez to Becerra, Becerra filed a voluntary petition for relief under
5  Chapter 13 of the Bankruptcy Code as Case No. 2:11-bk-58521-VZ.  Becerra's Chapter
6  13 bankruptcy case converted to a Chapter 7 case on January 4, 2012 and was
7  reassigned as Case No. 2:11-bk-58521-RK.  A motion for relief from the automatic stay
8  was filed in Becerra's Chapter 7 case, and this court entered an order on February 24,
9  2012 granting relief under 11 U.S.C. § 362(d)(1).
10       On March 11, 2012, fifteen days after the stay relief order was entered in
11 Becerra's case, the A S Trust then purportedly transferred an ownership interest in the
12 Subject Property to the Debtor, Dana Dorsey, through a quitclaim deed shown to be
13 recorded on March 12, 2012.  The quitclaim deed stated that the transfer was for "No
14 Consideration."  The quitclaim deed listed the property address of the Subject Property of
15 321 De Anza Way, Oxnard, CA  93033, for return of the recorded quitclaim deed.  The
16 Assessor's Parcel Number (APN) on the quitclaim deed, APN 219-343-245, was the
17 same as the APN listed on Suarez's grant deed to Becerra, though Exhibit A described
18 as an attachment to the quitclaim deed referencing the property's legal description was
19 not attached to copies of the quitclaim deed submitted by Movant.  The name of the
20 transferor on the quitclaim deed, A S Trust, apparently references the initials of the
21 borrower, Angelica Suarez, indicating that this entity is a nominee entity of hers.
22 This is an inference the court can reasonably draw under the totality of the circumstances
23 given that her initials are "A S," that in order for A S Trust to transfer a property interest in
24 the Subject Property it had to receive an interest from Suarez, that the transfer from A S
25 Trust to the Debtor was proximate in time, within four months, to the last purported
26 transfer of the Subject Property from Suarez to Becerra, that the transfer from A S Trust
27 to the Debtor was shortly after the court granted stay relief in Becerra's bankruptcy case
28 to allow Movant to undertake its nonbankruptcy collection remedies as to the Subject

3

Property (i.e., a matter of three weeks), that these transfers occurred while Suarez, the original borrower of the loan and the transferor, was in serious default on the loan, 19 monthly payments totaling some $36,000 in arrears as of March 2012, and that the transfers were made for no consideration to parties, who were in bankruptcy at the time of the transfer or immediately thereafter.

On March 13, 2012, one day after A S Trust's purported transfer of an ownership interest in the Subject Property to the Debtor, the Debtor filed a Chapter 7 bankruptcy petition as Case No. 2:12-bk-18895-RK. The Debtor did not list the Subject Property on her schedules.

In support of the Motion, Movant submitted a declaration that the transfers of the Subject Property were done without its consent and in violation of the terms of the deed of trust. Movant argues that the sole purpose of these unauthorized transfers was to forestall Movant's foreclosure actions on the Subject Property. Based on all the evidence submitted, Movant argues that relief under § 362(d)(4)(A) and (B) is warranted.

On April 11, 2012, the Debtor filed a response to the Motion ("Response"). In a declaration attached to the Response, the Debtor states the following:

> I have no knowledge of [sic] property at 321 De Anza Way, Oxnard, California 93033 nor do I know the alleged transferor of that interest. I can only presume that the transfer was orchestrated to take advantage of the bankruptcy stay that was effected upon the filing of my case and perhaps documents were doctored to make it seem like an interest was transferred to me prior to the commencement of the bankruptcy case.
>
> I have listed all assets in which I have an interest in my bankruptcy schedules.
>
> Because I have had and have no interest in the subject property I do not oppose the lender's motion for relief from stay but do object to any findings of bad faith, since this alleged transfer was accomplished without any knowledge or intent on my part.

On May 21, 2012, the court entered an order granting stay relief under § 362(d)(1). The matter was continued to June 5, 2012 to allow Movant to submit supplemental briefing regarding its request for stay relief under § 362(d)(4). On May 22, 2012, Movant

4

filed a supplemental brief.  The hearing was again continued to June 19, 2012 to allow Movant to provide additional support for its argument.

## ANALYSIS

When a court grants relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4), it gives creditors *in rem* relief from the automatic stay such that the order is binding in any bankruptcy case filed in the next two years purporting to affect the same real property.  *See* 11 U.S.C. § 362(d)(4), (b)(20).  Specifically, § 362(d)(4) states as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either--
>
> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
>
> (B) multiple bankruptcy filings affecting such real property.
>
> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. § 362(d)(4).

To obtain relief under § 362(d)(4), the court must find the following three elements are present: (1) the debtor's bankruptcy filing was part of a scheme; (2) the object of the scheme was to delay, hinder or defraud creditors; and (3) the scheme must involve either (a) the transfer of some interest in the real property without the secured creditor's consent or court approval, or (b) multiple bankruptcy filings affecting the property.  *First Yorkshire*

*Holdings, Inc. v. Pacifica L 22, LLC. (In re First Yorkshire Holdings, Inc.)*, 470 B.R. 864, 870-871 (9th Cir. BAP 2012).

**I.    The Debtor's Bankruptcy Filing was Part of a Scheme**

In the context of § 362(d)(4), a scheme has been defined as "an intentional artful plot or plan to delay, hinder or defraud creditors." *In re Duncan & Forbes Development, Inc.*, 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006), *citing Black's Law Dictionary* (8th ed. 2004).

The court has seen a pattern in a number of bankruptcy cases in which a borrower, who is not a debtor in bankruptcy, attempts to stave off foreclosure by purporting to transfer an interest in his or her property to a debtor in bankruptcy. Usually the debtor does not list the property on his or her schedules in the bankruptcy case, and there is otherwise no indication that the debtor claims an interest in the property. Sometimes the debtor will submit a response to the court disavowing any ownership interest in the property, like the Debtor in this case. The original borrower, or someone working on the borrower's behalf, may have found the Debtor's name by conducting a search through the public bankruptcy records. The borrower may have falsified and backdated a grant deed, and the deed may have never been actually recorded (although the copy of the grant deed submitted in this case has a recording stamp and *appears* to have been recorded). The exact method through which the scheme is accomplished may not necessarily be relevant. However, what is apparent, particularly in this case, is that the only party who is advantaged by this scheme is the original borrower because he or she benefits from the automatic stay in the bankruptcy case of another party by transferring an interest in property to a debtor in bankruptcy without filing a bankruptcy petition and complying with the requisite duties of a debtor in bankruptcy and having collection activity by his or her creditors stayed against the property while retaining an interest in the property.

In these situations, and in the case at bar, there is no evidence—and no argument—that *the Debtor* is part of the scheme. In fact, it is precisely this point that

6

makes the issue so significant. This situation has sometimes been referred to as "property dumping," and it is also said that the Debtor's case has been "hijacked." *See In re 4th Street East Investors, Inc.*, __ B.R. __, 2012 WL 2562660, at *1 (Bankr. C.D. Cal. June 29, 2012); Jeffrey J. Hagen, *Property Dumping*, Central District of California Bankruptcy Attorneys' Association Newsletter, Vol. 4, Issue 8, September 2011, at 9, *available at* http://www.bklawyers.org/files/cdcbaa_Newsletter_V4_I8.pdf.

The problem is that a secured creditor wants to put an end to the series of automatic stays resulting from a potentially never-ending string of bankruptcies that purportedly affect the original borrower's real property, yet an innocent bankruptcy debtor, however, should not suffer any negative consequences of relief being granted under 11 U.S.C. § 362(d)(4).[1] In this case, the Debtor specifically objects to any finding of bad faith. Thus, the court must examine whether relief may be granted under § 362(d)(4) where there is no evidence that the Debtor is part of the scheme.

The court begins its analysis with the language of the statute. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241 (1989) ("The task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself.") (citation omitted). "[W]here . . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Id.* (citation and internal quotation marks omitted). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut National Bank v. Germain,* 503 U.S. 249, 253-254 (1992). "[T]he plain language is regarded as

---

[1] An innocent debtor would certainly want to avoid any inference that he or she has exhibited bad faith or engaged in some abuse of the bankruptcy system, which may negatively impact the present or a future bankruptcy case. *See, e.g.,* 11 U.S.C. § 109(g)(2) (imposing a 180 day bar against refiling by an individual debtor who requests a voluntary dismissal of the bankruptcy case following the filing of a request for relief from the automatic stay under § 362). In this case, § 109(g)(2) would not be implicated because there is no evidence that the Debtor participated in the scheme. *See Greenwell v. Carty (In re Carty)*, 149 B.R. 601, 603 (9th Cir. BAP 1993) ("The obvious thrust of [§ 109(g)(2)] is to preclude the debtor from denying the creditor the benefit of termination of the stay by filing another case reimposing the stay.") (brackets in original), *quoting In re Berts,* 99 B.R. 363, 365 (Bankr. N.D. Ohio 1989).

7

conclusive, unless (1) the statutory language is unclear, (2) the plain meaning of the words is at variance with the policy of the statute as a whole, or (3) a clearly expressed legislative intent exists contrary to the language of the statute." *Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.,* 866 F.2d 278, 280 n.4 (9th Cir. 1989), *citing inter alia, Richards v. United States,* 369 U.S. 1, 11 (1962).

Section 362(d)(4) requires the court to find "that the filing of the petition was part of a scheme." 11 U.S.C. § 362(d)(4). This language could be interpreted to require a finding that the Debtor was part of the scheme and that the Debtor filed the petition in furtherance of the scheme. Alternatively, the statute could be interpreted to mean that the Debtor's petition need only be used as part of a scheme—without any knowledge or involvement by the Debtor.

At least one court has held that § 362(d)(4) "does not require that it be the debtor who has created the scheme or carried it out, or even that the debtor be a party to the scheme at all." *In re Duncan & Forbes Development, Inc.*, 368 B.R. at 32. The court agrees with this analysis and notes that § 362(d)(4) is written in the passive voice, and thus it does not require any involvement of the Debtor. The language of § 362(d)(4) is likewise devoid of any requirement of a finding of bad faith by the Debtor.

Like in *Duncan & Forbes Development*, this case is also a good illustration why § 362(d)(4) does not require any involvement by the Debtor. Subsection (d)(4) was added to § 362 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[2] The stated purpose of the subsection is to "reduce abusive filings." H.R. Rep. No. 109-31(I), part 1 at 70 (2005), 2005 WL 832198, at *138. Although much of BAPCPA focuses on curbing abuse by debtors, Congress also focused on the abuse and misconduct of others associated with the bankruptcy process. *Id.* at 5.

---

[2] The Bankruptcy Technical Corrections Act of 2010 amended § 362(d)(4) to change the phrase to the disjunctive, "delay, hinder, *or* defraud," making it consistent with other provisions that use the same phrase, such as §§ 548(a)(1) and 727(a)(2). Pub. L. 111-327 (2010) (emphasis added); 3 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 362.05[19][a] at 362-383 (16th ed. 2011).

8

Congress noted that "[s]uch abuse ultimately hurts consumers as well as creditors." *Id.* Thus, the court holds that the reading of § 362(d)(4) in *Duncan & Forbes Development* is consistent with the language of the statute and consistent with the legislative history behind BAPCPA. The court also finds that this result is necessary to protect the integrity of the bankruptcy system. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . or to prevent an abuse of process"); *see also, Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 (2007) (recognizing the "broad authority granted to bankruptcy judges to take any action that is necessary or appropriate to 'prevent an abuse of process' described in § 105(a)").

Thus, under the circumstances of the case at bar, the court finds that the Debtor's bankruptcy filing was part of a scheme because the Debtor's petition was used as part of a plan to delay or hinder creditors by extending the protection of the automatic stay to the Subject Property, the collateral of loan made by the lender to a nondebtor party (the original borrower, who allegedly transferred the property through a nominee entity).

**II.    The Object of the Scheme was to Delay, Hinder or Defraud Creditors**

To obtain relief under § 362(d)(4), the court must find that the object of the scheme was to delay, hinder or defraud creditors. *In re First Yorkshire Holdings, Inc.*, 470 B.R. at 870. Movant argues that the third-party scheme here is to delay foreclosure proceedings against the Subject Property. The verb "delay" is "[t]he act of postponing or slowing." *Black's Law Dictionary* (9th ed. 2009).[3]

---

[3] The court recognizes that the *Duncan & Forbes Development* court defined "delay and hinder" as an effort "to forestall [a creditor's] efforts in collecting on its debt *unlawfully*." *In re Duncan & Forbes Development, Inc.*, 368 B.R. at 34 (emphasis added). By inserting the term "unlawfully," the court appeared to create an additional element of proof for creditors that is unsupported by the statute and thus unwarranted. Subsections (A) and (B) specify the activity that must be part of the scheme. If a creditor is able to present evidence that either § 362(d)(4)(A) or (B) is satisfied, there is no additional burden to show that any effort to delay, hinder or defraud is unlawful.

9

In this case, it is not only clear that the object of the scheme was to delay foreclosure or other collection actions, but the third party—the original borrower—has been successful.  Documents have been submitted to Movant showing that the Subject Property is property of two different bankruptcy estates.  The original borrower, or someone working on her behalf, has been successful in implementing the scheme to obtain the benefit of the automatic stay to forestall the foreclosure process without submitting herself to the jurisdiction of the court and assuming the duties and responsibilities of a debtor in a bankruptcy case.  *See, e.g.*, 11 U.S.C. §§ 343, 521, 1107 and 1326; Fed. R. Bankr. P. 1007, 2015 and 4002.

Thus, this element is satisfied.

### III.    The Scheme Included Transfers Without Consent and Multiple Bankruptcy Filings

The court must find that the scheme included either (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval or (B) multiple bankruptcy filings affecting such real property. 11 U.S.C. § 362(d)(4)(A) and (B); *In re First Yorkshire Holdings, Inc.*, 470 B.R. at 870.

Movant submitted copies of two deeds showing that ownership interests in the Subject Property were transferred without its consent.  In the first deed, which states that it was executed on December 20, 2011, the original borrower, Suarez, transferred an interest in the Subject Property to Becerra through a grant deed shown to be recorded on December 21, 2011.  The grant deed stated that Suarez was transferring the property to herself and Becerra, and the grant deed recited on its face that no consideration was given by the transferee.  On November 28, 2011, three weeks prior to the stated date of recordation, Becerra filed a Chapter 13 bankruptcy petition.  In the second deed, which states that it was executed on March 11, 2012, a successor-in-interest to Suarez, A S Trust, transferred an ownership interest in the Subject Property to the Debtor, Dorsey, through a quitclaim deed shown to be recorded on March 12, 2012.  The quitclaim deed

10

stated that the transfer was from A S Trust to itself and the Debtor and that the transfer was for "No Consideration."

As to the issue of consent under § 362(d)(4)(A), the *Duncan & Forbes Development* court stated that a "borrower of secured credit has no obligation to obtain the approval of the secured creditor before alienating the property serving as collateral." *Duncan & Forbes Development Inc,* 368 B.R. at 36.  The court also held that a "secured creditor's consent under § 362(d)(4) applies only if the secured creditor has a right based on contract or other applicable law to require consent or court approval for a transfer of property in which the creditor holds a security interest." *Id.* at 37.  The court in *Duncan & Forbes Development* entertained the idea that the "due on sale" clause could establish a secured creditor's right to consent, but the court found that the secured creditor had failed to exercise its rights under the clause, and the court therefore denied relief under § 362(d)(4)(A). *Id.*

This court, however, does not adopt the *Duncan & Forbes Development* court's reading of § 362(d)(4)(A) that a secured creditor's consent under § 362(d)(4) applies only if the creditor has a right based on contract or other applicable law to require consent for a transfer of the property in which the creditor holds a security interest.  368 B.R. at 37. This court concludes that the express statutory language of § 362(d)(4) is clear and unambiguous that if a scheme to delay, hinder or defraud is shown, and if that scheme involves the transfer of an ownership interest in real property without the secured creditor's consent, then the secured creditor may obtain relief under § 362(d)(4).  Under the express terms of § 362(d)(4), the secured creditor need not show that it had some additional right to oppose the transfer.  *See In re First Yorkshire Holdings, Inc.*, 470 B.R. at 870-871 (articulating only a three-part test that does not include a finding that the creditor had a right to consent based on contract or other applicable law).  This reading of § 362(d)(4) is not an unreasonable restraint on alienation because a property owner still has the ability to effect a transfer of real property prepetition; however, that property owner may lose the protection of the automatic stay pursuant to § 362(d)(4)(A) if he or

she failed to obtain the consent of the secured creditor and if the other elements of § 362(d)(4) are satisfied.

In this case, Movant submitted a declaration showing that the transfer was made without its consent, and this evidentiary showing is unopposed. Thus, § 362(d)(4)(A) is satisfied. Alternatively, Movant has also shown that this is the second bankruptcy case affecting the Subject Property. Thus, § 362(d)(4)(B) is satisfied as well.

**IV.     Due Process for Original Borrower and Successor Parties**

Finally, the court recognizes that there could be due process concerns as to the original borrower, Angelica Suarez, and any transferee, such as A S Trust, because of the *in rem* nature of the relief under § 362(d)(4) as to the Subject Property. However, the court notes that Suarez's interest in the Subject Property and the interest of any transferee taking from her are subject to Movant's trust deed, and Movant served Suarez as well as the "Occupant(s)" at the Subject Property address with all relevant papers by first-class mail. Fed. R. Bankr. P. 9014 and 7004(b); *see also, Matter of Park Nursing Center,* 766 F.2d 261, 263 (6th Cir. 1985)(mail service of process satisfies constitutional due process requirements in bankruptcy proceedings). Suarez and "Occupant(s)" filed no opposition and failed to make an appearance or contest the relief sought by Movant. Thus, the court concludes that Suarez and any transferee have been afforded sufficient due process. *Id.; see also, Carpenter v. Mineta*, 432 F.3d 1029, 1036 (9th Cir. 2005) ("Due process requires notice and an opportunity to be heard."), *citing Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 n.7 (1972); *see also Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 452 (2004) (recognizing that a bankruptcy court has *in rem* jurisdiction).

## CONCLUSION

The court finds that based on the uncontroverted evidence in support of the Motion, Movant has satisfied the necessary elements to obtain *in rem* relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4)(A) and (B), and the Motion seeking relief under both of these provisions should be granted. In granting such relief, the court

12

1 further finds that there is no bad faith or misconduct by the Debtor and holds that such a
2 finding is not necessary to grant relief under 11 U.S.C. § 362(d)(4). Thus, the provisions
3 of 11 U.S.C. § 109(g)(2) will not apply by virtue of the stay relief granted as to the Subject
4 Property, and this decision shall have no adverse effect on the Debtor's bankruptcy case.

Movant is ordered to submit a proposed order granting relief consistent with this memorandum decision.

###

DATED: July 26, 2012

United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **MEMORANDUM DECISION RE MOVANT'S REQUEST FOR RELIEF UNDER 11 U.S.C. § 362(d)(4)** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **July 26, 2012**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below:

- Michael W Aiken    ecfnotices@ascensioncapitalgroup.com
- David S Hagen    go4broq@earthlink.net
- Donnetta Jordan    ecfnotices@ascensioncapitalgroup.com
- Bonni S Mantovani    cmartin@pralc.com
- Cassandra J Richey    cmartin@pprlaw.net
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Melissa A Vermillion    cmartin@pprlaw.net
- Timothy Yoo (TR)    tjytrustee@lnbrb.com, tyoo@ecf.epiqsystems.com

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by the clerk of the court by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

**Debtor:**
Dana Dorsey
231 N. Broadway #1
Redondo Beach, CA 90277

**Original Borrower**:
Angelica Suarez
321 De Anza Way
Oxnard, CA 93033

Occupant(s)
321 De Anza Way
Oxnard, CA 93033

A S Trust
321 De Anza Way
Oxnard, CA 93033

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

14